## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**MICHAEL AARON REED,**                           :

      **Petitioner**                    :        **CIVIL ACTION NO. 3:15-1539**

      **v.**                           :                **(JUDGE MANNION)**

**JAMES ECKARD,**                                 :

      **Respondent**                   :


### MEMORANDUM

Petitioner, Michael Aaron Reed, an inmate confined in the State Correctional Institution, Huntingdon, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of Franklin County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.


## I.   Background

The procedural and factual background underlying Reed's conviction was adopted from the June 20, 2015 Memorandum Opinion of the Pennsylvania Superior Court, affirming the denial of the Petitioner's Post Conviction Relief Act ("PCRA") petition and is as follows:

On July 27, 2010, at approximately 9:13 p.m., two armed men entered the Blue Ridge Food Mart in Blue Ridge Summit, Pennsylvania, and demanded the clerk give them all the money in the cash register.[1] Both men were wearing masks, one had a gun and the other was armed with a knife. After robbing the store of an estimated $500 to $550 in cash, they fled in a car parked behind the store.[2] **See** N.T., 6/23/2011, at 45-49, 71. The robbery was captured on the store's video surveillance camera.

Two witnesses, who were outside of the food mart at the time of the robbery, saw the culprits flee in a two-door, two-tone maroon and grey car, which they believed had the same body type as a Dodge Shadow or Spirit. One witness, Joseph Trail, noticed the car had a Maryland license plate, although he could not identify the plate number. **See** N.T., 6/23/2011, at 85, 109.

At approximately 9:20 p.m., Jeffrey Croteau was traveling on Pen Mar Road near Camp Louise, just over the Maryland border, when he observed a car on the side of the road with its front end in a ditch. **Id**. at 136-137. Croteau stopped to see if the driver needed assistance and, as he approached, he noticed the driver and passenger putting on t-shirts as they exited the car. He explained the two men "seemed like they wanted to get the car back on the road and get moving as quickly as possible." **Id**. at 137. The passenger, later identified as Reed, asked Croteau if he could use his cell phone to call his mother. Croteau attempted to place the call for Reed, but the call would not go through. Croteau then left as another vehicle stopped to help. **See id**. at 137-138.

---

[1] The Blue Ridge Food Mart is located close to the Pennsylvania/Maryland border. As will be discussed *infra*, Reed was arrested after his car slid down an embankment on a road in Maryland. Officers from several surrounding jurisdictions assisted in the investigation of the robbery.

[2] The store clerk testified he believed the culprits took a "[c]ouple of hundred dollar [bills], couple of fifty dollar [bills] … four or five [twenties] … two or three [tens] … four or five [fives]" and possibly "30 to 50" one dollar bills. N.T., 6/23/2011, at 72-73.

Shayla Murray and her boyfriend were driving by the accident scene around the same time when they stopped to help. Murray allowed Reed to use her cell phone and he placed two calls to his mother at 9:27 p.m. Murray and her boyfriend were still at the scene when the police arrived. **See** N.T., 6/24/2011 at 4-6, 11.

Officer Bryan Chappell, Jr., of the Waynesboro Police Department, responded to a radio call from the Washington Township Police to assist in investigating an armed robbery. Officer Chappell proceeded to the food mart and began driving around the nearby area to search for the suspects. At approximately 9:37 p.m., he came upon an older model Dodge or Plymouth that had slid off the embankment on Pen Mar Road, approximately two miles from the robbery scene. The car was two-tone, maroon on top and silver on bottom, with a Maryland license plate, and matched the description of the vehicle used in the robbery.[3] Officer Chappell secured the four individuals at the scene – Reed, his co-defendant Russell Runk, as well as, Murray, and her boyfriend Cameron Himes – until backup arrived. **See** N.T., 6/23/2011, at 155-160.

Corporal Lloyd Perkins, of the Washington Township Police Department, also responded to the armed robbery call, arriving at the food mart at approximately 9:20 p.m. Corporal Perkins was interviewing witnesses at the scene when he received a radio call from Officer Chappell, stating the officer believed he had located the suspect vehicle. Corporal Perkins proceed immediately to the crash scene in Maryland, arriving at approximately 9:39 p.m. **See id**. at 176-180. Corporal Perkins stated he was "surprised because [the vehicle that had skidded off the road] was the **exact description** [he] got from the witnesses at the [robbery] scene of the vehicle." **Id**. at 180-181 (emphasis supplied).

The responding officers conducted a pat down search of Reed and Runk. Detective Timothy Atwell, of the Washington County Maryland Sheriff's Officer, who was assisting at the crash scene, asked Runk if he could search his clothing. Runk agreed, and Detective Atwell recovered $487.00, which was kept "in a loose

---

[3] We note, however, that unlike the description of the suspect's car provided by the witnesses, Reed's car had four doors.

unorganized haphazard fashion" in his back pocket.[4] N.T., 6/24/2011, at 19. Thereafter, Runk and Reed were arrested. During a search incident to the arrest, the police recovered latex gloves from Reed.

Detective Atwell secured the vehicle involved in the crash and later obtained a search warrant for the vehicle. From inside the vehicle, the police recovered, *inter alia*, a pair of black camouflage pants, a black sweatshirt, a brown t-shirt, two pairs of sports gloves, a small pellet clip to an air gun, and registration card indicating the vehicle was registered to Reed.[5] **See id**. at 32-34. One pair of the gloves recovered matched the gloves on one of the suspects as seen in the surveillance video. No weapons were ever recovered.

Reed and his co-defendant Runk were tried before a jury in June of 2011. On June 24, 2011, the jury found both co-defendants guilty of two counts of robbery and one count of conspiracy. On August 23, 2011, Reed was sentenced to 60 to 120 months' imprisonment for one count of robber, and a consecutive 48 to 96 months' incarceration for the conspiracy conviction. The court imposed a concurrent sentence of 18 to 36 months' imprisonment for the second robbery conviction. Reed did not file a direct appeal.[6]

On September 10, 2012, Reed filed a timely *pro se* PCRA petition, in which he raised, *inter alia*, a challenge to the sufficiency and weight of the evidence, and trial counsel's

---

[4] The bills recovered from Runk were "two one hundred dollar bills, four fifty dollar bills, one twenty dollar bill, twelve five dollar bills, [and] seven one dollar bills." **Id**. at 20.

[5] It appears, from the surveillance video, that one of the masked robbers wore jeans and a black and white long-sleeved shirt, while the other wore camouflage pants and a black hoodie sweatshirt.

[6] Runk's judgment of sentence was affirmed by a panel of this Court. **See Commonwealth v. Runk**, ___A.3d___, No. 1621 MDA 2014 (Pa. Super. May 28, 2015) (unpublished memorandum).

ineffectiveness for failing to: (1) object to evidence and impeach witnesses at trial; (2) conduct a more thorough pretrial investigation, including an investigation of a similar robbery that occurred two weeks after the one in question; and (3) file a direct appeal.[7] Brian O. Williams, Esq. was appointed as counsel to assist Reed in litigating his PCRA petition. After being granted two extensions of time to file an amended petition, Williams filed a petition to withdraw as counsel and accompanying **Turner/Finley**[8] "no merit" letter on August 2, 2013. However, on August 20, 2013, the PCRA court entered an order directing Williams to address Reed's claim that trial counsel failed to file a requested direct appeal. Thereafter, on September 9, 2013, Williams filed an amended "no merit" letter, contending, once again, that Reed's PCRA claims were meritless, and concluding, specifically, that Reed never asked trial counsel to file a direct appeal. **See** Amended No Merit Letter, 9/9/2013, at unnumbered p. 4.

On October 15, 2013, the PCRA court entered an opinion and order granting counsel's petition to withdraw, and dismissing Reed's PCRA petition without a hearing. However, the court entered an amended order eight days later, to comply with the requirements of Pa.R.Crim.P. 907, and provide Reed with the opportunity to respond to the court's proposed dismissal of his petition. Reed originally filed a *pro se* response to the court's first order on October 30, 2013, in which he reiterated his prior claims of trial counsel's ineffectiveness, as well as asserted PCRA counsel's ineffectiveness for failing to raise additional claims. Specifically, Reed claimed he asked PCRA counsel to challenge trial counsel's ineffectiveness for failing to file a suppression motion, contesting the legality of the police's arrest and

---

[7] The other issues Reed raised in his *pro se* PCRA petition have been abandoned on appeal. Specifically, he argued (1) the initiation of his criminal case by the filing of an information, rather than by a grand jury indictment was unconstitutional; (2) the Legislature had no authority to enact the Pennsylvania Crimes Code; and (3) the restitution order in his sentence was erroneous. **See** Motion for Post Conviction Relief, 9/10/2012.

[8] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

subsequent search of his person. After the PCRA court entered its amended order, Reed filed a second *pro se* response, in which he incorporated by reference his prior filing. Thereafter, on December 20, 2013, the trial court entered an order, acknowledging that prior PCRA counsel's "no merit" letter "improperly addressed the issue of trial counsel's failure to file a direct appeal." Order, 12/20/2013. Accordingly, the court appointed Kristin Nicklas, Esq., to represent Reed at a February 13, 2014, hearing on the issue. **See id.**

The hearing was continued until April 28, 2014, and, following the hearing, on May 22, 2014, the PCRA court entered an order and opinion dismissing Reed's PCRA petition.[9] Reed filed a *pro se* motion for reconsideration, which the PCRA court declined to consider since Reed was, at that time, represented by counsel. On June 13, 2014, PCRA counsel filed a motion to amend the PCRA petition and requested a hearing, stating that she had obtained new evidence to support Reed's claim that he asked counsel to file a direct appeal. **See** Motion to Amend PCRA and Schedule Hearing, 6/12/2014. Nonetheless, the PCRA court denied counsel's motion, and this timely appeal followed.

On June 30, 2014, the PCRA court directed Reed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On July 14, 2014, however, PCRA counsel filed a motion to withdraw and requested a **Grazier**[10] hearing because Reed had informed her he wanted to proceed *pro se*. At the conclusion of a **Grazier** hearing on August 15, 2014, the PCRA court determined Reed "made a knowing, intelligent, and voluntary waiver of his right to counsel" and granted him permission to proceed *pro se*. Order, 8/15/2014. **See also** N.T., 8/15/2014. Accordingly, on August 18, 2014, Reed filed a *pro se* concise statement in response to the PCRA court's June 30, 2014, Order.

---

[9] The only issue addressed at the April 28, 2014, hearing was whether trial counsel was ineffective for failing to file a direct appeal.

[10] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

- 6 -

On Appeal, Reed raises the following four layered ineffectiveness claims. He asserts PCRA counsel was ineffective for failing to raise or properly argue the ineffectiveness of trial counsel for (1) failing to file a pretrial suppression motion; (2) failing to impeach witnesses, prepare for trial, and object to evidence; (3) failing to investigate and present evidence of third party culpability; and (4) failing to object to the admission of Commonwealth's Exhibit #4.

(Doc. 20-4, Commonwealth v. Reed, No. 1044 MDA 2014, slip. op. at 1-9).

On June 23, 2015, the Pennsylvania Superior Court affirmed the denial of Reed's PCA petition. Id. Thereafter, Reed timely filed the instant petition pursuant to 28 U.S.C. §2254.

## II.   **Grounds For Relief**

Reed asserts PCRA counsel was ineffective for failing to raise or properly argue the ineffectiveness of trial counsel for:

1. Failing to file a pre-trial suppression motion.

2. Failing to impeach witnesses and object to evidence.

3. Failing to investigate and prepare for trial.

4. Failing to file a requested direct appeal.

(Doc. 1 at 4).

### III.  Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).  28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed

by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. §2254(d)(1). It is " 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'." Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 280 (2016) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (explaining that the "contrary to" and "unreasonable application of" clauses

of §2254(d)(1) have independent meaning). A state-court adjudication is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" §2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Williams, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under §2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case'." Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it " '*was objectively unreasonable*'." Id.

- 10 -

(quoting Williams, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under §2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

Id. at 102.

The standard of review set forth at §2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" Burt v. Titlow, 571 U.S. 12, 18 (2013).7 "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether

there was sufficient evidence to support the state court's factual findings." Dennis, 834 F.3d at 281 (quoting §2254(d)(2) and citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance'." Titlow, 571 U.S. at 18 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see Rice v. Collins, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. Wood, 558 U.S at 301 (quoting Collins, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at §2254(d) does not apply and the Court reviews the claim *de novo*. See, e.g., Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at §2254(d) applies, the state court's factual determinations are presumed to be correct under §2254(e)(1) unless

Petitioner rebuts that presumption by clear and convincing evidence. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the §2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of §2254(d).") (citing Appel, 250 F.3d at 210).

Reed's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## IV.  **Discussion**

Petitioner raises four claims of ineffective assistance of counsel. The clearly established ineffective assistance of counsel standard as determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams, 529 U.S. at 391, 120 S.Ct. 1495. Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." Id. at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

Id. at 689, 104 S.Ct. 2052

> Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." Id. at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. Id. at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696, 104 S.Ct. 2052.

Rainey v. Varner, 603 F.3d 189, 197–98 (3d Cir. 2010).

- 14 -

When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold'." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

The Superior Court stated that the proper standard governing ineffective assistance of counsel claims requires the Petitioner "plead and prove, by a preponderance of the evidence, three elements: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [Petitioner] suffered prejudice, because of counsel's action or inaction". Commonwealth v. Spotz, 18 A.3d 244, 259-260 (Pa. 2011).  (Doc. 20-4, at 24, Reed, No. 1044 MDA 2014, slip. op. at 9). The Third Circuit has specifically held that the very ineffectiveness assistance of counsel test relied upon by the Superior Court in this matter is not contrary to the Supreme Court's Strickland standard. See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, we find that the Superior Court's decision is not contrary to Strickland.

The Pennsylvania Superior Court found that Petitioner properly preserved his challenge to PCRA counsel's representation by including it in his October 30, 2013 response to the PCRA court's Rule 907 notice. (Doc. 20-4 at 26, Reed, No. 1044 MDA 2014, slip. op. at 11). As such, his layered claims of ineffectiveness were addressed by the Superior Court under the following standard:

> [W]here the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.
>
> Layered claims of ineffectiveness "are not wholly distinct from the underlying claims[,]" because "proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.]" "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue."

(Doc. 20-4 at 25, Reed, No. 1044 MDA 2014, slip. op. at 10, citing Commonwealth v. Rykard, 55 A.3d 1177, 1190 (Pa. Super. 2012)).

Below, we consider whether the state courts' disposition of Petitioner's ineffective assistance of counsel claims involved an unreasonable application of Strickland or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

### a. <u>Failure to file a Pretrial Suppression Motion.</u>

Petitioner's first claim for review is that PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness in failing to file a pretrial suppression motion to "suppress all fruits of the unlawful stop, arrests and searches of the Defendants and their vehicle." (Doc. 1 at 11). Specifically, Petitioner claims that the vehicle did not match the description of the suspected vehicle; once detained, the officers took no action to confirm or dispel their suspicion that Reed was involved in the robbery for more than 45 minutes and then not arrested for another two and one-half hours later; the "pat search" of Runk exceeded the boundaries of a pat search under Terry v. Ohio, 392 U.S. 1 (1968); Runk's consent to search was not voluntarily given; and the probable cause affidavit supporting the search warrant for Reed's vehicle contained false information by the two investigating officers. (Doc. 1 at 11-17).

The Superior Court determined that "trial counsel had a reasonable basis for not filing a meritless suppression motion." (Doc. 20-4 at 27-29). The court explained that contrary to Reed's characterization, this case did not involve a traditional vehicle stop as Reed's car was stuck in an embankment when Officer Chappell drove by the scene. Id. The court determined that because the vehicle matched the description of the one involved in an armed robbery, the officer had sufficient justification to perform a pat-down for

weapons. Id. Relying on the facts of the case, the court found that Runk gave Detective Atwell consent to search his person, and that regardless of consent, Reed was prohibited from challenging Runk's consent to search his own person because Reed had no expectation of privacy in Runk's clothing. Id. With respect to the time it took investigators to formally place Reed under arrest, the court found that Reed failed to assert how he was prejudiced. Id. And, finally, the Court found that Reed's challenge to the search warrant executed on his vehicle was unavailing as there was more than sufficient probable cause to justify the search. Id. As noted by the Superior court, the vehicle matched the description of the car in which robbery suspect fled; witnesses stated suspects were armed; cash was found in Runk's pocket that was consistent with the sum of what was taken from the store; and the disabled vehicle was located within two miles of the robbery scene in an area consistent with the direction of travel as recounted by witnesses. Id.

This Court finds nothing unreasonable in the state court's consideration of this Strickland claim. While the Fourth Amendment generally proscribes unreasonable searches and seizures, a police officer may detain an individual if, based on a totality of the circumstances, the officer has a "particularized and objective" suspicion, that the person stopped is engaging in criminal activity. United States v. Cortez, 449 U.S. 411, 417-18 (1981). See also Terry v. Ohio, 392 U.S. 1, 21 (1968) ("[I]n justifying the

particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."). The state court identified specific and articulable facts that led Detective Atwell to reasonably believe that Petitioner and his co-conspirator had been engaged in criminal activity at the time Atwell came upon their vehicle in the embankment. Consequently, there can be no error in the state court's conclusion that Reed failed to show that the underlying claim had arguable merit or that the outcome at trial would have been different had counsel filed a suppression motion. Petitioner has not shown that the state court adjudication of this ineffectiveness claim reflects an unreasonable application of Strickland. Accordingly, it follows that appellate counsel was not ineffective for failing to raise a meritless issue. See Jones v. Barnes, 463 U.S. 745, 754 (1983) (finding that a criminal defendant has no constitutional right to insist that appellate counsel advance every non-frivolous argument that defendant wants raised); Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (holding that appellate counsel does not have a duty to raise every possible claim).

### b. **Failure to impeach witnesses and object at trial.**

Petitioner alleges that PCRA counsel was ineffective for failing to argue that trial counsel failed to impeach witnesses and failed to properly object at trial. (Doc. 1 at 17-21). Encompassed in this claim is that PCRA counsel was

ineffective for failing to argue that trial counsel neglected to object to the admission of Commonwealth Exhibit #4, which "contains all of the police reports composed in this case during investigations." Id.

The Superior Court accepted the PCRA's court's rationale as their own as follows:

> (1) trial counsel "thoroughly cross-examined the victim about the amount of money taken and the inconsistencies between his trial testimony and the preliminary hearing testimony[;]" (2) although counsel did not directly cross-examine the witness regarding their description of car color as maroon, when Reed's car was, in fact, bright red, the PCRA court determined it was "entirely reasonable" for the car to "appear darker at night" and counsel did not need to impeach witnesses "to distinguish between two allegedly different shades of red[;]" and (3) both trial counsel and co-defendant's counsel objected[11] to several items clothing recovered from Reed's car). Because we find the PCRA court sufficiently addressed and properly disposed of these issues in its prior opinion, we rest on its well-reasoned basis. Accordingly, no relief is warranted.

(Doc. 20-4 at 31). We discern no way in which trial counsel performed deficiently in this regard and Petitioner has provided no argument as to how his performance fell short of the standards guaranteed by the Sixth Amendment. Nor has Petitioner demonstrated that trial counsel's actions or omissions meet the high bar of the prejudice prong. Thus, we cannot find the

---

[11] Furthermore, the Court notes that the record is replete with objections to admissions of certain exhibits offered by the Commonwealth and trial counsel was even successful in preventing the admission of some this evidence. (See Doc. 20-9 at 21-25).

Superior Court's analysis of this claim to be an unreasonable application of Strickland and neither trial nor appellate counsel were ineffective.

As to trial counsel's failure to object to the admission of Commonwealth Exhibit #4, the Superior Court, found that "because this issue was not raised in either Reed's *pro se* PCRA petition, or his response to the PCRA court's Rule 907 notice, it is waived for our review." (Doc. 20-4 at 32).

The above demonstrates that Petitioner's claim regarding the admission of Commonwealth Exhibit #4 is unexhausted. There is no question that the Pennsylvania courts would not entertain this claim at this juncture. Consequently, the claim is procedurally defaulted. See McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Reed does not allege cause or prejudice.[12] Nor does he allege that lack of review by this Court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed as the claim is procedurally defaulted.

---

[12] Even if this claim were not defaulted, Commonwealth Exhibit #4 was never shown to the jury. (See Doc. 20-9 – 20-13. As such, Petitioner has suffered no prejudice.

- 21 -

### c. <u>Trial counsel failed to adequately prepare for trial.</u>

Petitioner claims that trial counsel failed to conduct pretrial investigations and failed to prepare for trial. (Doc. 1 at 21-22). Included in this claim are counsel's failure to: (1) present evidence that Petitioner's car could [not] have been involved in the robbery based on the time frame of the events and distance from the crime scene; (2) object to the Commonwealth's closing argument; and (3) investigate the difference between the exact amount of money taken and the amount found on Runk pursuant to a search incident to the arrest. Id.

The Superior Court found that these claims were either not included in Petitioner's *pro se* petition or his response to the PCRA court's Rule 907 notice. (Doc. 20-4 at 30). As such, the Superior Court found these claims waived for review. Id. Consequently, they are unexhausted and procedurally defaulted. See McCandless, 172 F.3d at 260. There is no question that the Pennsylvania courts would not entertain this claim at this juncture. Consequently, the claim is procedurally defaulted. As no traverse has been filed, there is not argument of cause or prejudice. Nor does Petitioner allege that lack of review by this Court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed as the claim is procedurally defaulted.

### d. Failure to file a Direct Appeal.

Petitioner claims that trial counsel was ineffective when he ignored his request to file a direct appeal. (Doc. 1 at 4).

When a petitioner alleges ineffectiveness based on counsel's failure to appeal, "a more specific version of the Strickland standard applies." Harrington v. Gillis, 456 F.3d 118, 125 (3d Cir. 2006) (citing Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000)). In Flores-Ortega, the Supreme Court declined to institute a *per se* rule finding counsel performed deficiently under Strickland whenever counsel fails to consult with the client regarding an appeal. Instead, the Supreme Court adopted a case-by-case analysis, so that evaluating alleged "deficient performance" under Strickland requires a two-step analysis. Id. (citing Flores-Ortega, 528 U.S. at 478).

First, the Court must determine whether counsel consulted with his client about filing an appeal. Flores-Ortega, 528 U.S. at 478. If counsel has consulted with the client, then the Court should determine whether counsel followed the client's express instructions. Id. If counsel has not consulted with the client, "the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. In determining whether a failure to consult constitutes deficient performance, the Supreme Court recognized that "counsel has a constitutionally imposed duty to consult with the defendant

about an appeal when there is a reason to think either (1) a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. To establish prejudice from counsel's failure to consult with a petitioner, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Harrington, 456 F.3d at 125 (quotation and citation omitted).

At the PCRA hearing, Petitioner testified that, immediately after the jury returned the guilty verdict, he asked trial counsel, Mark Orndorf, Esq., about an appeal. (Doc. 20-2 at 20). Attorney Orndorf purportedly replied that he would see the Petitioner at sentencing. Id. The Petitioner also testified that, immediately before he was sentenced, he told Attorney Orndorf that he wanted to appeal. Id. After he was sentenced, Petitioner testified that he waited for word from Attorney Orndorf but did not have any contact with him and claimed that he did not have Attorney Orndorf's contact information. Id.

 By contrast, Attorney Orndorf testified that he had a brief conversation with the Petition about his appeal rights to give him an idea as to what was going to happen in the future. Id. at 24. At that time, according to Attorney Orndorf, "Mr. Reed did not acknowledge to me at that time he wanted to

appeal." Id. Attorney Orndorf also testified that he had a conversation with the Petitioner at sentencing where he discussed Petitioner's appeal rights, particularly that there was a motion that would be filed for reconsideration, then a motion to the Superior Court, and the timeliness required for each. Id. Attorney Orndorf testified that the Petitioner responded by saying, "what's the point of an appeal?" Id.

During the PCRA hearing, the PCRA court found Attorney Orndorf's testimony far more credible than Petitioner's, in that it was supported by details, including Petitioner's "explanation at sentencing that he committed the crimes due to his financial difficulties, and his expression of remorse for his actions and decisions." (Doc. 20-2 at 5). The PCRA court noted that "[a]t the hearing on his PCRA Petition, [Petitioner] testified that he did not commit the crimes, and that he may have admitted to committing the crimes at sentencing but was hoping at the time that he said what was wanted to be heard." Id. The PCRA court determined that "such conflicting testimony calls [Petitioner's] credibility into doubt." Id. Thus, the PCRA court found that Petitioner did not prove that he reasonably demonstrated to counsel that he wanted to file an appeal. Id.

We find the state court's determination was not contrary to, or an unreasonable application of Supreme Court precedent. Schriro, 550 U.S. at 573. Thus, the Court will deny Petitioner's claim as meritless.

**V.** **Certificate of Appealability**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## VI.    Conclusion

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 8, 2022**
15-1539-01